UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **SHANE R. ELERSIC**, | ) | Case No. 4:05 CV 1071 |
| | ) | |
| Petitioner, | ) | Judge Sarah Lioi |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| **DAVID BOBBY, WARDEN**, | ) | |
| | ) | |
| Respondent, | ) | Magistrate Judge James S. Gallas |
| | ) | |

The State of Ohio's prosecution of petitioner Shane R. Elersic has had a long and complex

history in two counties, Geauga and Lake.  This present matter directly concerns only his October

11, 2002 Lake County conviction for burglary with firearm specification.  See *State v. Elersic*, 2004

WL 2804809, 2004 - Ohio - 5301, Ohio App. (11 Dist.), appeal not allowed, 105 Ohio St.3d 1407,

821 N.E.2d 1027, 2005 - Ohio - 279 (Table 2005).  Since then Elersic has moved for and has been

denied judicial release, substitute counsel for special prosecuting attorney, appointment of new legal

counsel due to conflict of interest and most recently Elersic has moved for and has been denied new

trial which is currently on appeal before the Ohio Supreme Court.  See *State v. Elersic*, Case No. 02

CR 000159 at https://phoenix.lakecountyohio.gov/pa/pa_cp.urd/pamw2000.docket. [1]


*History*:

The state appellate court decision provides the Elersic's prosecution history in more depth

due to the issue of double jeopardy, which has since been abandoned.  The essential facts are that

---

[1] Elersic also has sought post-conviction relief on claims which are not germane to the grounds raised in this petition.  See *State v. Elersic*, 2004 WL 720658, 2004 - Ohio - 1707 (Ohio App. 11 Dist.), and Petition for post-conviction relief, Ex. 14, raising prosecutorial misconduct use of perjured testimony, and failure to provide exculpatory evidence.

4:05 CV 1071                                       2

Elersic was indicted on September 17, 1999, in Lake County, Ohio for breaking and entering, theft, vandalism, receiving stolen property with firearm specification and engaging in a pattern of corrupt activity.  Elersic was found guilty of these offenses except for vandalism.  These convictions were reversed and remanded on appeal.  *State v. Elersic*, 2004 WL 2804809, at ¶¶1-4; 2001 WL 1497191, 2001 - Ohio - 8787 (Ohio App. 11 Dist.).  On remand the trial court dismissed all counts except receiving stolen property with firearm specification, and that matter was retried resulting in Elersic's acquittal on July 8, 2002.  *Id.,* at ¶¶4, 7.

Meanwhile on March 29, 2002 Elersic was secretly indicted on one count of burglary with firearm specification, and one count of grand theft with firearm specification in relation to the  April 25, 1999 burglary of the home of Douglas Tenney.  *Id.,* at ¶5.  At trial in October 2002, the grand theft charge with firearm specification was dismissed by the trial court, and the case went to the jury on the original burglary charge and a lesser included offense (Trial Tr. 438-40).  Elersic was found guilty by a jury on burglary with firearm specification.  *Id.,* at  ¶10.  Elersic thereafter filed an application for federal habeas corpus relief under 28 U.S.C. §2254 to overturn the state conviction claiming denial of speedy trial, denial of compulsory process and due process and obtaining witnesses, and  challenging the constitutionality of the Geauga County conviction used to enhance his sentence.  Elersic has exhausted his state remedies for purposes of §2254(b) with respect to these grounds, so federal collateral review may proceed.

4:05 CV 1071                                        3

*Discussion:*

> GROUND FOR RELIEF NO. 1: Petitioner's due process to a speedy trial governed under the United States and Ohio Constitution were violated when the state issued new criminal charges stemming from the same facts and sequence of events from the original indictment which were prosecuted three years earlier.

The state appellate court explained that the burglary with firearm specification related to a incident from April 25, 1999, involving the removal of a Bose stereo system, computer and cash as well as 14 hunting and target shooting firearms and a hunter's backpack from the home of Douglas Tenney. *Id.*, ¶¶11-12, 74-75. Elersic was not indicted for the Tenney burglary until March 29, 2002 (Elersic at ¶¶5, 10). Elersic does not contest the time period between March 29, 2002 and this trial on October 10, 2002 as being a denial of speedy trial. Rather Elersic challenges only the pre-indictment delay as a violation of his right to speedy trial under the Sixth Amendment. In state court Elersic raised claims under the Sixth Amendment and its state constitutional analogue as well as claims under Ohio's Speedy Trial Act. The state claims challenged the calculation under a very specific statutory interpretation in *State v. Adams*, 43 Ohio St.3d 67, 538 N.E.2d 1025 (1989) and *State v. Clay*, 9 Ohio App.3d 216, 459 N.E.2d 609 (1983), "that 'when new and additional charges arise from the same facts as did the original charge and the state knew of such facts at the time of the initial indictment, the time within which trial is to begin on the additional charge is subject to the same statutory limitation period that is applied to the original charges.'" *State v. Parker*, 113 Ohio St.3d 207, 211, 863 N.E.2d 1032, 1035, 2007 - Ohio - 1534 (2007) (citing *Adams* and *Clay*). Elersic maintains that since the pattern of corrupt activity charged in 1999 began with the same date as the Tenney burglary and one of the firearm specifications involved a firearm from the Tenney

4:05 CV 1071                                    4

burglary in the original 1999 indictment, that he was entitled to be brought to trial within 90 days pursuant to Ohio Revised Code §2945.71(E), the state's "triple count" provision.  See Appellate Brief, pp. 6-8, Ex. 4, ECF #9-5, Memorandum in Support of Jurisdiction, pp. 7-9, Ex.8, ECF #9-9. In his arguments to the state court Elersic claimed  under *Adams/Clay* the time for trying the March 2002 indictment had expired by February 2, 2000, with the conclusion of the original trial in Case 99 CR 364.

Elersic was understandably disappointed with the state appellate court decision.  Elersic very clearly invoked only the Sixth and Fourteenth Amendment right to speedy trial referring to *Klopfer v. North Carolina*, 386 U.S. 213 (1967) as a prologue to his *Adams/Clay* argument (Appellate Brief, p. 6, Memorandum in Support of Jurisdiction, p. 6).  It is clear from his briefing that the heart of his argument sought dismissal under Ohio Revised Code §2945.71.  To Elersic's chagrin, no doubt, the state appellate court answered these arguments by concluding that there was no violation of Fifth Amendment due process.

The state appellate court's decision was not entirely unwarranted. because the court was substituting a more rational argument in place of the Sixth Amendment based argument presented. It is firmly established that the Sixth Amendment's speedy trial clause  has no application to pre-indictment or pre-arrest delay. In *United States v. Marion*, the U.S. Supreme Court held, "that the speedy trial clause of the Sixth Amendment does not apply to the period before a defendant is indicted, arrested or otherwise officially accused[.]"  *United States v. MacDonald*, 456 U.S. 1, 6, 102 S.Ct. 1497, 1501, 71 L.Ed.2d 696 (1982), citing *Marion*, 404 U.S. 307, 313, 92 S.Ct. 455, 459, 310

4:05 CV 1071                                   5

L.Ed.2d 468 (1971)..  "[D]elay prior to arrest or indictment may give rise to a due process claim under the Fifth Amendment."  *MacDonald*, 456 U.S. at 7, 102 S.Ct. at 1501; and see *United States v. Lovasco*, 431 U.S. 783, 788-89, 97 S.Ct. 2044, 2047-48, 52 L.Ed.2d 752 (1977).  These principles were later echoed in *United States v. Loud Hawk*, 474 U.S. 302, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986), contrasting *Klopfer v. North Carolina*, where a judicial proceedings had commenced in order to place defendant under actual restraint for purposes of the Sixth Amendment.  *Loud Hawk*, 474 U.S. at 310-11, 106 S.Ct. at 653-54.  Accordingly, there is no merit to a speedy trial argument raised in Elersic's prologue referring to Sixth Amendment protections.

        As the state court recognized, the Sixth Amendment has no application to pre-indictment delay.  The state appellate court decision  noted the Sixth Amendment right to speedy trial but then digressed into a more logical Fifth Amendment argument concerning pre-indictment delay, using the Ohio Supreme Court decision in *State v. Luck*, as a precedential guide. See  *Elersic* at ¶¶32-37; and see *State v. Luck*, 15 Ohio St.3d 150, 472 N.E.2d 1097 (1984).  As the second syllabus in *Luck* states, "[a]n unjustified delay between the commission of an offense and a defendant's indictment therefor, which results in actual prejudice to the defendant, is a violation of the right to due process of law under Section 16, Article I of the Ohio Constitution and the Fifth and Fourteenth Amendment to the United States Constitution." (*Id.,* syllabus ¶2).   *State v. Luck* has been seen as an adaptation of the tests derived in *United States v. Marion*, and *United States v. Lovasco*.  See *Monzo v. Edwards*, 281 F.3d 568, 581 (6th Cir. 2002).

4:05 CV 1071                                    6

The state appellate court, however, did not respond to the arguments before it. Obviously,

ELersic's arguments went unaddressed.  In such circumstances the district court has no state court

decision before it and must resolve the issue *de novo.*  See  *Howard v. Bouchard*, 405 F.3d 459, 467

(6th Cir. 2005), *cert. denied*, 126 S.Ct. 1032 (2006); *Moldonado v. Wilson*, 416 F.3d 470, 476 (6th

Cir. 2005); *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003); *McKenzie v. Smith*, 326 F.3d 721,

726-27 (6th Cir. 2003), *cert. denied*, 540 U.S. 1158 (2004); *Harris v. Stovall*, 212 F.3d 940, 943 (6th

Cir. 2000), *cert. denied*, 532 U.S. 947 (2001); and see *Wiggins v. Smith*, 539 U.S. 510, 534, 123

S.Ct. 2527, 2542, 156 L.Ed.2d 471 (2003).


There is no point in belaboring Elersic's Sixth Amendment argument since it lacks a legal

foundation.  What Elersic had been deprived of was a decision on his *Adams/Clay* argument. In

general Ohio's Speedy Trial Act (Ohio Rev. Code §§2945.71-2945-73) requires the state to bring

defendant to trial within 270 days but when defendant is incarcerated its "triple count" provision

applies, requiring that the imprisoned defendant be brought to trial within 90 days.  See Ohio Rev.

Code §2945.71(C)(2) & (E). However, violations of Ohio's Speedy Trial Act do not present a

constitutional claim.  See *Hutchison v. Marshall*, 744 F.2d 44, 45 (6th Cir. 1984), *cert. denied*, 469

U.S. 1221 (1985).  Ohio's Speedy Trial Act "has nothing to do with fairness of the trial itself. . . [but

rather] goes to the fairness of . . . extended pretrial detention." *Norris v. Schotten*, 146 F.3d 314, 329

(6th Cir. 1998), *cert. denied*, 525 U.S. 935 (1998); *Hutchison*, at 47.


It is well established that federal habeas corpus relief does not lie for errors of state law

except in extraordinary situations where the error produced resulted in a fundamentally unfair trial.

4:05 CV 1071                                          7

 See *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 3102, 111 L.Ed.2d 606 (1990); *Pulley v.*

*Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 874-5, 79 L.Ed.2d 29 (1984); *Estelle v. McGuire*, 502 U.S.

62, 67, 112 S.Ct. 475, 479, 116 L.Ed.2d 385 (1991). However, with particular reference to speedy

trial claims, the Sixth Circuit has held:

> Although this principle does not prohibit federal habeas relief where a state court's
> error in interpreting or applying its own law has rendered the trial that convicted the
> appellant so fundamentally unfair as to have deprived appellant of substantive due
> process in violation of the U.S. Constitution, see *McGuire*, 502 U.S. at 67-68, 112
> S.Ct. 475; *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1354 (6th Cir.1993),
> *cert. denied*, 510 U.S. 1201, 114 S.Ct. 1317, 127 L.Ed.2d 666 (1994), this is not our
> situation here. As this court concluded in *Hutchison*, the fundamental fairness
> principle has only been applied to pretrial proceedings where there is some effect on
> the fairness of the trial itself. See *Hutchison*, 744 F.2d at 47. Like the statutory
> speedy trial claim in *Hutchison*, the claim here "has nothing whatsoever to do with
> the fairness of the trial itself ... [but rather] goes to the fairness of [the petitioner's]
> extended pretrial detention." Id. Appellant has pointed to nothing that would suggest
> otherwise. Moreover, this is certainly not a case where the innocence of the accused
> is manifest. See *Olsen v. McFaul*, 843 F.2d 918, 933 (6th Cir.1988).

*Norris v. Schotten,*  146 F.3d at 329.


        There need be no concern over the possibility of a denial of fundamental fairness or other

substantive due process rights where there has been the opportunity to present his allegations of

error or state law through the state courts.  *Norris*, 146 F.3d at 329.  Elersic, though, did not have

this opportunity since the state appellate court failed to address his *Adams/Clay* argument for denial

of speedy trial under state law. Nonetheless, as mentioned previously, the state act does not

incorporate the constitutional concept of fairness in the course of trial. See  *Norris*, 146 F.3d at 329;

*Hutchison*, 744 F.2d  at 47. The adjudication of Elersic's claim as a matter of fundamental fairness

requires the application of pre-indictment Fifth Amendment protection in due process against actual

4:05 CV 1071                                        8

prejudice, which as the state appellate court had found was not demonstrated by Elersic or his situation. Consequently, there is no basis for the federal court in habeas review to act as a super-appellate court to undertake reversal of Elersic's conviction as presenting evident circumstances where there has been a  denial of fundamental fairness, and this certainly is not a situation where Elersic's innocence is manifest despite his claims to the contrary. Accordingly, following *de novo* review of the arguments presented to the state courts, Elersic's arguments have no merit for purposes of federal collateral review.  Federal habeas corpus is not an expansive remedy to make right all legal missteps defendant may suffer.


> GROUND FOR RELIEF NO. 2: [Elersic's] Sixth Amendment right to compulsory process and due process of law were violated when the trial court excluded an essential key witness. This error was more than harmless as such testimony would have changed the outcome of the entire trial.

This Sixth Amendment right to compulsory process summarized in *Cunningham v. Stegall,* 13 Fed. Appx. 286, 290, 2001 WL 700843, at *3  ( 6th Cir. 2001), "establishes, 'at a minimum, that criminal defendants have the right to the government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt.' *Pennsylvania v. Ritchie*, 480 U.S. 39, 56, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). However, 'more than mere absence of testimony is necessary to establish a violation of the right [to compulsory process].... [The defendant] must at least make some plausible showing of how [the witness's] testimony would have been both material and favorable to his defense.' *United States v. Valenzuela-Bernal*, 458 U.S. 858, 866-67, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982)."

*Exclusion of Josh Miller:*

4:05 CV 1071                                    9

The state appellate court recognized the right to compulsory process and found the trial court had erred in denying Elersic the right to compel the attendance of Josh Miller. Its decison was based on a state principle that "it is only when the exclusion acts to completely deny the defendant his or her constitutional right to present a defense that the sanction is impermissible. *State v. Harcourt* (1988), 46 Ohio App.3d 52***." *Elersic*, 2004 WL 2808049 at ¶46.   The state appellate court concluded stating only:

> The trial court erred in not permitting Miller to testify.  However, this error was harmless.  None of appellant's substantial rights were affected nor was he prejudiced in any manner.  The exclusion of Miller's testimony did not completely deny appellant the opportunity to present a defense.

*Id.*, at ¶ 50.

Respondent rationalizes the state appellate court's decision because it "correctly noted" that the jury was not to determine whether Miller committed the offense, but whether or not Elersic committed the offense. See *Elersic*, at ¶49.  The state appellate court, though, repeated this part of the trial court's rationale for excluding Miller's testimony with disapproval. So while that trial court's findings were "correctly noted," these findings were not the basis of the state appellate court's decision.

The state appellate court did not consider the significance of the Supreme Court's decisions in *Taylor v. Illinois* nor *Michigan v. Lucas*. [2]  *Taylor* is especially applicable precedent for this situation. Elersic's counsel had not provided advance notice of his intent to call Josh Miller to

---

[2] *Taylor v. Illinois*, 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988); *Michigan v. Lucas*, 500 U.S. 145, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991).

4:05 CV 1071                                        10

testify, and had not, for that matter, provided a witness list. *Elersic*, at ¶ 47.  *Taylor* held Sixth Amendment compulsory process clause did not prevent a trial court from disallowing testimony from a witness as a sanction for deliberate violation of reciprocal discovery by not revealing the witness' identity until trial, even when the fault rested with counsel.  *Id.*, 484 U.S. at 413-19, 108 S.Ct. at 655-58; *Michigan v. Lucas*, 500 U.S. at 153, 111 S.Ct. at 1749 (Blackmun, J. concurring).

        The state decision provides no reason to justify itself.  Review of the trial transcript, however, shows that the State was presenting hearsay evidence concerning Josh Miller to establish that he was  Elersic's accomplice.  The State's evidence concerning Josh Miller began with the burglary victim, Douglas L. Tenney (not "Tenny" as spelled in the state appellate court's decision), who testified that Josh Miller was the boyfriend to Tenney's live-in girlfriend's daughter (Trial TR. 139).  Tenney testified that he saw Elersic with Miller at the Convenient Store shortly after the April 1999 burglary, and that he knew Miller and Miller has been to his house in the past when he dated Tenney's girlfriend's daughter.   Miller knew that Tenney had guns and hunting equipment and Tenney testified at trial that he was aware that Miller was being investigated for his involvement in the burglary.  (Trial TR. 142-150).   Another state witness, Michael Fazzolare, testified that Elersic told him that Josh Miller was involved in the Tenney burglary and that Elersic had told him that Miller had "tipped" him off about the "job" because Miller had known Douglas Tenney (Trial TR. 226-27).   Further on re-direct examination of another State's witness, Lake County Sheriff's Department Deputy Kevin Coleman testified that Michael Fazzolare told him that Elersic and  Miller were the two people responsible for the burglary (Trial TR. 357-58).

4:05 CV 1071                                           11

On the second day of trial defense counsel asked to call Josh Miller in response to numerous

statements in the State's case referring to Josh Miller. This request was denied but defense counsel

proffered the following:

> He's going to say he hasn't seen Mr. Tenney, he was apparently dating a
> stepdaughter I think it was 13 years ago and he hadn't seen him in years and
> that he had nothing to do with this burglary.  And then there was also the
> indication from Mr. Tenney that he had seen Josh Miller and the defendant
> in the Convenient Store and he denies that and also that the police had come
> and tried to talk to him and when he said he wouldn't go to the police station
> that was the end of it.

(Trial TR. 366). [3]

This record reveals no willful and deliberate attempt by defense counsel to prejudice the

State's case.  So defense counsel's delayed action certainly was not a situation "motivated by a drive

to obtain a tactical advantage that would minimize the effectiveness of cross-examination and the

ability to address rebuttal evidence."  See *Taylor*, 484 U.S. at 415, 108 S.Ct. at 656.  Elersic simply

wanted to rebut the argument that he conspired with Miller in the burglary because Miller was not

involved.


The state appellate court recognized that the trial court had erred in excluding Miller's

testimony.  What is left is the question whether there was reversible error in the finding that

exclusion of Miller's testimony was harmless.  Respondent argues that harmless error must be

measured under *Brecht v. Abrahamson's* standard that the error did not have a "substantial and

injurious effect or influence in determining the jury's verdict." *Id.*, 507 U.S. 619, 637-38, 113 S.Ct.

---

[3]  Elersic includes additional matters that Miller allegedly would have testified about but these matters were
not presented to the trial court until sentencing.  (See Sentencing TR. 8-9, Docket No. 14).  It was simply too late to raise
these additional items since the trial had concluded.  Review is limited to the proffer presented at trial.

4:05 CV 1071                                  12

1710, 123 L.Ed.2d 353 (1993), quoting *Kotteakos v. United States*, 328 U.S. 750, 776 , 66 S.Ct.

1239, 90 L.Ed. 1557 (1946).  Since this case was briefed, the U.S. Supreme Court has specifically

held, "that in §2254 proceedings a court must assess the prejudicial impact of constitutional error

in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht*

. . ., whether or not the state appellate court recognized and reviewed it for harmlessness under the

'harmless beyond a reasonable doubt' standard set forth in *Chapman [v. California]*, 386 U.S. 18,

87 S.Ct. 824, 17 L.Ed.2d 705 [(1967)]." *Fry v. Pliler*, - U.S. -, 127 S.Ct. 2321, 2328, 168 L.Ed.2d

16 (2007). [4]

        The state appellate court's standard that exclusion of Miller's testimony "did not completely

deny appellate the opportunity to present a defense" constitutes review under a standard that fits

neither within  *Chapman*'s nor *Brecht*'s standards of review.  *Pliler,* besides resolving the question

of which of the two standards of review apply for harmless error, also highlights this fundamental

flaw in the state decision.  The state appellate court applied a test for harmless error which favored

the State more than *Chapman*'s "beyond a reasonable doubt" standard by assuming harmlessness

unless there was a complete denial of the ability to present a defense. As a measure of the

constitutional right to compulsory process and the right to present a defense, this standard requiring

_____

        [4] The question over which standard of harmless error to apply under §2254 has presented the federal courts with
some difficulty.  *Mitchell v. Esparza*, was read to "strongly impl[y]" that *Chapman*'s standard applied to habeas review
in light of the changes under the Anti-terrorism and Effective Death Penalty Act of 1996.  See *Edelman v. McKee*, 471
F.3d 576, 582-83 (6th Cir. 2006); *Mitchell*, 540 U.S. 12, 17-18, 124 S.Ct. 7, 157 L.Ed.2d 263 (2003) (*per curiam*).  Thus
the same standard from direct review carried over into federal collateral review.  Following *Pliler*, ,this position has been
reconsidered, and now in conducting harmless error review, the "stricter (more state-deferential)" *Brecht* standard
applies.  See *Vasquez v. Jones*, 496 F.3d 564, 574-75 (6th Cir. 2007); *Wilson v. Mitchell*, 498 F.3d 491, 502-03 (6th Cir.
2007).

4:05 CV 1071                                            13

a finding of harmless error when there is all but a complete denial of the opportunity to present a

defense, is constitutionally repugnant.

    The fact that the state decision is in error does not automatically lead to granting the writ of

habeas corpus. The analytical procedure begins with 28 U. S.C. §2254's Congressionally imposed

constraints on the jurisdictional powers of review of state court adjudications of the merits, which:

(1) "resulted in a decision that was contrary to;" or (2) "or involved unreasonable application of;"

(3) "clearly established Federal law, as determined by the Supreme Court of the United States." 28

U.S.C. §2254(d)(1). Under the "contrary to" standard of review, "[a] state court's decision is

'contrary to' [] clearly established law if it 'applies a rule that contradicts the governing law set forth

in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from

a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court]

precedent." *Mitchell v. Esparza,* 540 U.S. at 15-16, 124 S.Ct. at 10, quoting *Williams v. Taylor*, 529

U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).  Under the "unreasonable application"

standard, "the state court identifies the correct governing legal rule from [the Supreme] Court's

decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529

U.S. at 413; *Wiggins v. Smith*, 539 U.S. 510, 520-21, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003).

    Since the state appellate court was conducting direct review of constitutional error under the

Sixth Amendment, the court should have identified its standard of review as *Chapman*'s harmless

beyond a reasonable doubt, so that the error "did not contribute to the verdict obtained." *Chapman*,

386 U.S. at 24, 87 S.Ct. at 828; and see *Greer v. Miller*, 483 U.S. 757, 768, 107 S.Ct. 3102, 97

4:05 CV 1071                                14

L.Ed.2d 618 (1987);  *Brecht*, 507 U.S. at 636, 113 S.Ct. at 1721; *Fry*, 127 S.Ct. at 2326.  The state

court applied an incorrect rule as its standard, and since there was no application of clearly

established Federal law, there was no "unreasonable application."  The state decision was, however,

"contrary to" clearly established Federal law in applying a rule that contradicts the governing law

set out in Supreme Court cases. See *Williams v. Taylor*, 529 U.S. at 405, 120 S.Ct. at 1519; *Brown

v. Payton*, 544 U.S. 133, 141, 125 S.Ct. 1432, 1438, 161 L.Ed.2d 334 (2005); *Fulcher v. Motley*, 444

F.3d 791, 799 (6ᵗʰ Cir. 2006).   Accordingly, the reviewing court under habeas corpus must conduct

*de novo* review.  *Fulcher*, at 799.


*De Novo Review of Harmless Error*:

        The *Brecht* standard of review looks to actual, not hypothetical impact. See *Wilson v.

Mitchell*,  498 F.3d 491, 503-04 (6ᵗʰ Cir. 2007); *Brecht v. Abrahamson*, 507 U.S. at 637. [5]

---

        [5]   "Characterizing an error as harmless might have either of two meanings. On the one hand, an error might be deemed harmless if it played such an inconsequential role in the actual trial in which it occurred that it assuredly had no impact on the trial's verdict. 2 R. Hertz & J. Liebman, Federal Habeas Corpus Practice & Procedure § 31.4d (5th ed.2005). On the other hand, an error might be deemed harmless-even if it played an important role in the actual trial-if a hypothetical new trial absent the error would likely produce the same outcome as did the actual trial. *Id.*

The Supreme Court has indicated that of these two meanings the proper one is the first (i.e., whether the error had an actual impact on the outcome), and not the second (i.e., whether a hypothetical new trial would likely produce the same result)[.]. · · Likewise, as the *Brecht* Court explained, "[t]he standard for determining whether habeas relief must be granted is whether ... the ... error 'had substantial and injurious effect or influence *in determining the jury's verdict.*' " *Brecht,* 507 U.S. at 623, 113 S.Ct. 1710. . . ."

*Wilson v. Mitchell*, 498 F.3d at 503 -504.

4:05 CV 1071                                        15

For there to be actual impact, the error must have either "a substantive and injurious effect or influence in determining the jury's verdict," or the court is left in "grave doubt" over a "matter so evenly balanced" that the court concludes there is a "virtual equipoise as to the harmlessness of the error." *Ferensic v. Birkett*, 501 F.3d 469, 481 (6th Cir. 2007), citing and quoting *Brecht*; *O'Neal v. McAninch*, 513 U.S. 432, 438, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995); *Kotteakos*, 328 U.S. at 765.

Elersic argued to the Ohio Supreme Court that the appellate court erred in finding harmless error because the evidence was not overwhelming as evidenced by the acquittal on the companion charge of receiving stolen property,[6] and that the stolen stereo and firearms were found in the house of the State's witnesses Fazzolare and Emily Matty.  Further Elersic claims that Fazzolare admitted to the burglary in a statement to a confidential informant.  See Memorandum in Support of Jurisdiction, p. 11-12, Ex. 8, ECF #9-9.

No evidence concerning Josh Miller was necessary to sustain the burglary with firearm specification.  To briefly restate the state court findings, after the Tenney home was robbed on April 25, 1999 the Lake County Sheriff's Department notified numerous area electronic stores to be aware of any individuals who may be looking to sell, repair and/or purchase parts for a Bose stereo system. Mentor Television Service Manager Paul Benne on May 20, 1999 contacted Lake County Detective Ashman regarding an encounter he had with two men (Elersic and Fazzolare) to inquire about purchasing a remote control for a Bose stereo system. See *Elersic*, 2004 WL 2804809 at ¶¶11-13.

---

[6] Actually, the second count of the March 29, 2002 indictment was for grand theft, not receiving stolen property. (See Indictment Ex. 2, ECF #9-3).

4:05 CV 1071                                    16

The remote control necessary to operate the Bose stereo had been left behind at the Tenney residence.  *Id.*  Paul Benne testified that he told Elersic that we would need a serial number to order the Bose remote, and Elersic provided a matching serial number to the Bose system stolen from the Tenney residence.   Benne gave a description of the two males to the Lake County Sheriff's Department and later viewed a photo array and immediately pointed to Elersic.  In addition Elersic was driving his girlfriend's Blazer in late June 1999 and Fazzolare testified that when Elersic picked him up there were two backpacks in the car.  The vehicle became disabled and abandoned by Elersic and when the Lake County Sheriff's Department later towed the car they discovered that one of the backpacks matched the one taken from the Tenney residence.  *Id.*, at ¶15.  Further, Fazzolare testified that he bought the Bose stereo system from Elersic.  *Id.*, at ¶16.  Fazzolare's wife, Emily Matty, testified that Elersic told her he broke into the Tenney residence, stole a stereo system from the Tenney's home and sold it to her husband.

The erroneous exclusion of Miller's testimony that he was not at the Convenient Store, had nothing to do with the burglary, and his implicit confirmation that he was a suspect in the burglary, neither had a substantial and injurious effect on the verdict nor creates grave doubt as to the harmlessness of the error.

Elersic's defense rested on inconsistent statements from Fazzolare and Matty prepared by Elersic's former counsel to the effect that Elersic was not involved in the Tenney residence burglary. Central to this was Fazzolare's affidavit denying Elersic's involvement in the crime (Trial TR. 232-39).  Matty also testified concerning a recorded statement made to the investigator for Elersic's

4:05 CV 1071                                    17

former counsel, which again stated Elersic was not involved in the burglary.  (Trial TR. 172-196).

Both these witnesses repudiated these prior statements explaining why they were telling the truth

at trial, but had lied in the affidavit and the recorded statement.  There was some question as to

Elersic's accomplice.  Fazzolare also testified that Elersic had talked to him about breaking into the

Tenney residence, but Fazzole felt "uncomfortable" when there was possibility of discovery by

someone in the house (Trial TR. 224-25).  So there was a question on who was Elersic's accomplice.

Overriding this credibility dispute, though, was Mentor Television Service Manager Paul Benne's

testimony that placed the stolen Bose stereo in Elersic's possession.  *Elersic*, at ¶¶12-14, 74), and

also Tenney's stolen backpack was recovered from the Blazer Elersic had borrowed from his

girlfriend (*Id.*, at ¶15).  Whether or not Miller or Fazzolare were also involved was superfluous to

Elersic's conviction.  Furthermore, Elersic's argument that Fazzolare admitted to a confidential

informant to his involvement in the burglary, is an evidentiary matter that does not involve Miller's

testimony.  In any event Fazzolare testified at trial that he had been convicted of receiving stolen

property in relation to items taken from the Tenney residence and sentenced to three years (Trial TR.

219-221).  Accordingly based on the proffered evidence from trial, the exclusion of Josh Miller's

testimony was harmless error under the standard set out in *Brecht* through *Fry v. Pliler.*


*Deputy Harpster:*

Elersic next claims denial of his Sixth Amendment right of compulsory process with respect

to Deputy Harpster, who had not been properly served with subpoena.  The state appellate court

found that the deputy had not been properly served with subpoena, that defense counsel had not

asked for a continuance or to enlist the help of the Lake County Sheriff's Department to secure the

4:05 CV 1071                                    18

deputy's appearance, and that in any event the deputy would testify to Elersic's traffic citation and impoundment of his vehicle on April 25, 1999, which was admitted through exhibits.  *Elersic*, at ¶51.  Presumably the trial court's ruling was premised on Ohio Evid. R. 403(B) which permits exclusion of relevant evidence, "if its probative value is substantially outweighed by consideration of undue delay, or needless presentation of cumulative evidence."

"[T]he Constitution permits judges to exclude evidence that is repetitive . . . only marginally relevant or poses an undue risk of harassment, prejudice, [or] confusion of the issues, "when the exclusion of evidence occurs under rules that are neither disproportionate "to the ends they are asserted to promote" or rules that serve no legitimate purpose.  *Holmes v. South Carolina*, 547 U.S. 319, 326, 126 S.Ct. 1727, 1732, 164 L.Ed.2d 503 (2006); *United States v. Blackwell*, 459 F.3d. 739, 752-53 (6th Cir. 2006); and see *United States v. Scheffer*, 523 U.S. 303, 308, 118 S.Ct. 1261,140 L.Ed. 413 (1998).  Thus when the rule is proportionate, the testimony may be excluded "under standard rules of evidence."  *Taylor*, 484 U.S. at 152; *Forensic*, 501 F.3d at 475-76; *Blackwell*, 459 F.3d at 752-53.

While again the state appellate court did not refer to the appropriate case law governing Elersic's claim, a deferential standard of review applies which liberally states, "that a state court need not even be aware of all precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" *Mitchell v. Esparza*, 540 U.S. 12, 16, 124 S.Ct. 7, 10, 157 L.Ed.2d 263 (2003), quoting *Early v. Packer*, 537 U.S. 3, 7-8, 123 S.Ct. 352, 154 L.Ed.2d 263 (2000) (*per curiam*).

4:05 CV 1071                                        19

The reasoning was incomplete because no proportionality analysis appears in the state decision.  See *Forensic*, 501 F.3d at 476 (court of appeals never applied proportionality-based proposition to the case before it).  However the result is not contrary to clearly established federal law.  The evidence was cumulative to Elersic's exhibits of vehicle impoundment.  As for consideration of undue delay.  Elersic's witness was not present and defense counsel appears not to have been especially motivated in making some effort to secure the deputy's presence.  Accordingly the exclusion of this witness was permitted under Ohio Evid. R. 403(b) and this was not disproportionate to Elersic's right of compulsory process.

As a final note, Elersic claims that Deputy Harpster would testify that Elersic was incarcerated at the time of the Tenney burglary.  There is nothing preserved in the record to support this argument and it is significant that appellate counsel did not raise it.  Compare, Appellate Brief p. 17, Ex. 4, ECF #9-5.

> GROUND FOR RELIEF NO. 3: Petitioner is currently in custody in violation of the Constitution or Laws or Treaties of the United States due in part to a constitutionally invalid Geauga County conviction which was used to further the sentence in this Lake County conviction

The third ground is a challenge to Elersic's November 9, 2000 conviction in the Geauga County Common Pleas Court, Case No. 00 C 23 used to enhance his sentence for the Lake County conviction.  Respondent argues that as can be seen from the sentencing hearing for the challenged conviction, the Lake County sentence, which was entered approximately two years after the Geauga

4:05 CV 1071                                        20

County Sentence, made no reference to the Geauga County sentence.  (Judgment Entry of Sentence, Ex. A, ECF #9-4).

Respondent apparently did not review the sentencing hearing where the Geauga County convictions were factored into Elersic's Lake County sentence (Sentencing TR. 13).

In any event, this argument is foreclosed because relief is generally unavailable to a state prisoner seeking relief under 28 U.S.C. §2254 when the sentence is challenged on the ground that it was enhanced based on an allegedly unconstitutional prior conviction for which the petitioner is no longer in custody.  See *Lackawanna County District Attorney v. Coss*, 532 U.S. 394, 121 S.Ct. 1567, 149 L.Ed.2d 608 (2001); *Abdus-Samad v. Bell*, 420 F.3d 614, 629-31 (6th Cir. 2005), *cert. denied*, 127 S.Ct. 380 (2006).  Elersic voices none of the exceptions to the general rule such as lack of counsel in the prior criminal proceeding, compelling evidence of actual innocence, or the state court's unjustified refusal to rule on a constitutional claim.  *Lackawanna*, 532 U.S. at 404-06; *Abdus-Samad*, 420 F.3d at 630.  Moreover Elersic was no longer "in custody" under the Geauga County Sentence.  This final point is established in the dismissal of Elersic's previous habeas corpus petition in Case No. 4:04 CV 2513 in the Northern District of Ohio where Judge Gwin granted the motion to dismiss the petition stemming from the Geauga County convictions based upon the fact that Elersic was no longer in custody:

> The Supreme Court held that a habeas petitioner does not remain "'in custody' under a conviction after the sentence imposed for it has fully expired, merely because" that conviction has been used to enhance a subsequent sentence.  *Id.* at 492.  *See also Lackawanna County District*

4:05 CV 1071                                   21

>           *Attorney v. Coss*, 532 U.S. 394, 401, 121 S.Ct. 1567, 149 L.Ed.2d 608
>           (2001).

*Elersic v. Bobby*, 2006 WL 840362 (N.D. Ohio).  Consequently, there is no merit to the third ground.


### CONCLUSION AND RECOMMENDATION

Following review of the petition and applicable law, Elersic has not demonstrated that he is in custody pursuant to a judgment of the state court which resulted in a decision that was contrary to or involved an unreasonable application of Federal law as determined by the Supreme Court of the United States or was the result of a decision based on an unreasonable interpretation of the facts in light of the evidence in the State court proceeding.  See 28 U.S.C. §2254(d)(1) and (2).  Elersic has not demonstrated any error resulting in denial of fundamental fairness or cause to hesitate due to the probability of actual innocence.  There has been no demonstrated need for an evidentiary hearing.  It is recommended that Elersic's application for habeas corpus be denied.


                                        _____s/James S. Gallas_____
                                        United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).


Dated: February 1, 2008